ANGELIQUE, The, (SHANNON v.)

[See Shannon v. The Angelique, Case No. 12,705.]

---

## Case No. 386.

### In re ANGELL.

[10 N. B. R. 73; 1 Cent. Law J. 363; 6 Chi. Leg. News, 341; 31 Leg. Int. 254; 21 Pittsb. Leg. J. 206.]

District Court, E. D. Michigan. July 9, 1874.

INVOLUNTARY BANKRUPTCY—PETITION—JOINING OF CREDITORS.

[The provisions of section 12 of the act of June 22, 1874, amending section 39 of the bankruptcy act, requiring one-fourth of the creditors in number and one-third in amount to join in the petition, which the section makes applicable to all cases of involuntary bankruptcy commenced prior to the passage of the amendatory act, do not apply to a case in which judgment was given and the warrant served and executed before the passage of the act.]

[Cited in Re Leland, Case No. 8,231; Re Comstock, Id. 3,077.]

[In bankruptcy. On motion to have the proceedings dismissed. Denied.

[Frederick E. Angell was adjudged a bankrupt, and the usual warrant served and executed prior to the passage of the act of June 22, 1874, (amending the bankruptcy act,) and, subsequently to the passage of the act, moved to have the proceedings dismissed, according to section 12 of the amendatory act, which provides that the section shall apply to all cases of involuntary bankruptcy commenced prior to its passage.]

Mr. Stacy, for the motion.
Mr. Walker, opposed.

LONGYEAR, District Judge: That the provisions of the recent act requiring one-fourth in number and one-third in amount, of the creditors, to join in an involuntary petition for adjudication of bankruptcy, were

intended to apply, and can and must be applied to all cases commenced between December 1st, 1873. and the passage of that act. in which there has been no adjudication, I entertain no doubt; and it has been so held by the district court for the northern district of Illinois. In re Scammon, [Case No. 12,430.] But the question here goes beyond that. It is whether those provisions were intended to apply, and can be applied, to cases so commenced, which had passed into judgment before the passage of the act. The act cannot be given the application and effect contended for, because it involves the vacating and annulling the judgment of the court. and granting a new trial. No rule of constitutional law is better settled than that, in a constitutional government. with a division of powers. like that of the United States; no legislative enactment can have the effect and operation to annul the judgment of a court already rendered, or grant a new trial, especially as it respects adjudications upon the private rights of parties. "When they have passed into judgment." says Justice Nelson, in State v. Wheeling, etc., Bridge Co., cited below, "the right becomes absolute, and it is the duty of the court to enforce it." Cooley, Const. Lim. 93–95, and cases cited; State v. Wheeling, etc.. Bridge Co., 18 How. [59 U. S.] 421, 431, and see also the dissenting opinions of Justices McLean, Grier. and Wayne. at pages 437, 449; Moser v. White, [29 Mich. 59.] decided by the supreme court of Michigan, at the January term of 1874, not yet reported.

Courts will not presume that congress intended to exceed its powers, or in any manner to invade the domain of the judiciary, unless such intent is clearly expressed by the words used, or by necessary implication. The words used in a statute may be broad enough. and they probably are in the statute under consideration, to admit of such a construction; but the courts will in no case give them a construction that involves the exercise of an excess of power, where, by a more limited application of them, such exercise of power is not involved. In the present instance the enactment in question is given full effect, and in my opinion all the effect congress intended it should have, by applying and limiting it to cases still pending, and undisposed of by adjudication. It is abundantly evident that congress did not intend these provisions to apply to cases already adjudicated. for the following reasons: First. It was not in their power to do so, as already shown. Second. They did not so expressly enact. Third. The provisions can have full and consistent effect without giving them such application. Fourth. They made no provision for the saving of rights accrued, or acts done under adjudications in cases where the proceedings might, under the provisions in question, eventually fail and be dismissed. And this has still greater

force from the further fact that they did make such saving provision in case of a discontinuance of proceedings as provided by section 14. Other reasons will readily suggest themselves, but the foregoing I consider conclusive. I hold, therefore, that the provisions in question apply only to cases where the petition for adjudication is still pending, and not to cases in which adjudications had passed upon the petition before the approval of the act. It results that the motion must be denied. Ordered accordingly.